IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

   Plaintiff,

v.                                                        Case No. 22-CR-145-JFH

PATRICK ETHAN BRASHERS,

   Defendant.

### OPINION AND ORDER

Before the Court is a motion to schedule sentencing and to set deadline for completion of presentence investigation report ("Motion") filed by Defendant Patrick Ethan Brashers ("Defendant"). Dkt. No. 28. The United States of America ("Government") opposes the Motion. Dkt. No. 31. For the reasons stated, Defendant's Motion is DENIED.

Defendant pled guilty to two counts of assault—one count of felony assault resulting in serious bodily injury in Indian country and one count of misdemeanor assault by striking, beating, and wounding—on June 16, 2022. *See* Dkt. No. 25; Dkt. No. 26; Dkt. No. 27. He has been detained in federal custody since May 24, 2022, when he was picked up on a writ of habeas corpus ad prosequendum from the Rogers County Jail. Dkt. No. 7; Dkt. No. 18. Defendant's sentencing has not been scheduled. In the Motion, Defendant requests the Court set a deadline for completion of his presentence investigation report and schedule his sentencing hearing within six (6) months or one hundred and eighty (180) days of his June 16, 2022 plea hearing. Dkt. No. 28.

In this Court's view, the Motion seems to scold the Court for the current speed of its docket. Defendant cites national statistics from 2016 to 2021 on average sentencing timelines. Dkt. No.

28 at 1-2.[1]  Defendant invokes Federal Rule of Criminal Procedure 32 and the Constitution's Due Process Clause to claim that delay is inordinate and prejudicial to him. *Id.* at 2.  Given the not-so-subtle undertones Defendant implies regarding the Court's purported "delay," it seems appropriate and necessary to educate Defendant and his counsel on the impropriety of the Motion.

In a federal criminal case, "[t]he court must impose sentence without unnecessary delay." Fed. R. Crim. P. 32(b)(1).  Appellate courts have recognized for more than fifty (50) years that a slow timeline is not problematic in and of itself:  "[i]t is well settled that passage of time alone will not bar imposition of sentence or require a defendant's discharge." *Welsh v. United States*, 348 F.2d 885, 886 (6th Cir. 1965).  Instead, "delay must partake of the purposeful and oppressive, or even smack of deliberate obstruction on the part of the Government, before relief will be granted." *United States v. Grabina*, 309 F.2d 783, 786 (2d Cir. 1962) (discussing *Pollard v. United States*, 352 U.S. 354, 361-62 (1957)).  The determinative factor is the *unnecessary* character of delay.

The Oxford English Dictionary defines "unnecessary" as "more than is needed; excessive; superfluous."  Unnecessary, Oxford English Dictionary (last visited Sept. 22, 2022), https://www.oed.com/view/Entry/215737?redirectedFrom=unnecessary#eid.  The Macmillan Dictionary defines "unnecessary" as "something that should not have happened because it could have been avoided."  Unnecessary, Macmillan Dictionary (last visited Sept. 22, 2022), https://www.macmillandictionary.com/us/dictionary/american/unnecessary.  Black's Law Dictionary defines "unnecessary" as "not required under the circumstances."  Unnecessary,

---

[1] The Court can't help but notice the absence of any other meaningful statistic relevant to the issue at hand—such as the average number of criminal cases tried per judge across the country, the average number of sentencings conducted per judge, or the average number of presentence reports prepared by a probation officer—since *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). *See infra* at 3.

*Black's Law Dictionary* (11th ed. 2019). A recounting of the Court's current circumstances is thus appropriate.

The Court has experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020), which held that while Congress had diminished the Creek reservation in Eastern Oklahoma, it had never formally disestablished it. This imposed federal "jurisdiction over the apprehension and prosecution of major crimes by or against Indians in a vastly expanded Indian Country." *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 692 (Okla. Crim. App. 2021). *McGirt*'s holding was later extended to other reservations as well.

As Chief Justice Roberts recognized in his *McGirt* dissent, "the share of serious crimes committed by 10%–15% of the 1.8 million people in eastern Oklahoma, or of the 400,000 people in Tulsa, is no small number." 140 S.Ct. at 2501. The practical effect of *McGirt* was a one-year increase of nearly 200% in the number of criminal cases filed in the Northern District of Oklahoma and more than 400% in the Eastern District of Oklahoma. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*. *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022). And numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, --- F. Supp. 3d ---, 2022 WL 1948762, at *7 (E.D. Okla. Apr. 29, 2022) (collecting cases).

The dramatic increase in criminal caseloads because of *McGirt* has resulted in strained judicial resources across numerous areas, two of which are particularly relevant here. First, the

3

Northern District of Oklahoma is allocated three and a half full-time district judges but, due to unfortunate and unforeseeable circumstances, has been operating with only two and a half judges in the tsunami of *McGirt*. Further, as of October 1, 2022, the Northern District will be down to only one and a half active district judges, of which the undersigned is the half-time judge due to his multi-district caseload—a caseload which includes the Eastern District of Oklahoma, which has had a proportionally even larger onslaught of criminal cases since July 2020.[2]

Additionally, the United States Probation Office has had an avalanche of presentence investigations to conduct. Each defendant is a unique human being with many factors to be researched for the Court's consideration before sentencing, including: personal and family history; physical condition; mental and emotional health; potential substance abuse history; educational, vocational, and special skills; employment history; and financial condition as well as specific

---

[2] Indeed, when the Motion was filed, this case was set before the Honorable Claire V. Eagan. However, due to Judge Eagan taking Senior status effective October 1, 2022, this case, among others, was reassigned to the undersigned. This additional explanation of the Court's circumstances should not be viewed as a complaint—far from it, as Judge Eagan has faithfully, diligently, and honorably served this District for over 24 years. She has earned every right to take Senior status and her willingness to continue to serve in that role is greatly appreciated by this Court. Perhaps Defendant is unaware of the Court's inability to replace district judges. By constitutional design, that authority lies within the other branches of government. *See* U.S. Constitution, Article II, § 2 (providing that the President shall nominate, and by and with the advice and consent of the Senate, shall appoint judges of the court to serve pursuant to Article III of the Constitution). Yet, despite its inability to appoint additional district judges, this Court has not set by idly with the influx of criminal cases under *McGirt*. To the contrary, this Court has made substantial efforts to create a significant visiting judge program to assist with the monumental caseload which fell on it virtually overnight. With the support of the Tenth Circuit, the Administrative Office of U.S. Courts, and the Chief Justice of the Supreme Court, district judges from across the country have been recruited and have agreed to sit by designation in the Northern District to help try criminal cases and conduct sentencings. This program has even extended to seeking the assistance from visiting Magistrate Judges to help conduct change of plea hearings and other pretrial responsibilities. Further, this Court has undergone the arduous process of seeking and obtaining approval for an additional full-time Magistrate Judge. And still yet, this Court was even forced to place a moratorium on the trial of civil cases, except under extraordinary circumstances, in an effort to combat the challenges under *McGirt*. *See* General Orders 22-05, 22-07, 22-10, 22-11, 22-13.

offense conduct, sentencing guideline calculations and sentencing options. The presentence investigation and resulting report address *all* these facets of a defendant's life. Considering the detail required for a presentence investigation report, the gravity of a sentencing decision, and the effect of imposition of a sentence on a defendant's life, liberty, and freedom, the presentence investigation process is not one that should be carelessly rushed.[3]

Defendant's Motion glaringly omits *any* mention of *McGirt* despite the case's seismic consequences on the Northern and Eastern Districts of Oklahoma. This conspicuous silence is bold considering that the Office of the Federal Public Defender, which drafted the Motion, has been in the midst of the *McGirt* fallout for over two years now. That office too has no doubt been taxed in responding to the tidal wave of criminal cases prosecuted in federal court because of *McGirt*. Applying the standard of "unnecessary delay" under Rule 32, Defendant does not provide any ground whatsoever to suggest that the timeline in this case has been purposely slow or oppressive, excessive, superfluous, or avoidable under the circumstances the Court and counsel currently face. Defendant's suggestion that any delay is "undue" or "exorbitant" [Dkt. No. 28 at 2] is, to put it charitably, tone-deaf.

The Court need not conduct a due process analysis because Defendant acknowledges the Supreme Court has not recognized a due process right to speedy sentencing. Dkt. No. 28 at 2 (citing *Betterman v. Montana*, 578 U.S. 437, 447-48 (2016)). The Court does note, however, that even if analyzed under the *Barker v. Wingo* factors that Defendant encourages, the result would be the same. The *Barker* factors consider: "(1) the length of the delay; (2) the reason for the delay;

---

[3] The Court would like Defendant to understand that it views his case as important, including the endeavor to set his sentencing as soon as possible. Indeed, there are other defendants waiting for sentencing, many of whom have been waiting far longer than the Defendant here. This is not a situation the Court is satisfied with, but it is truly making every effort to diligently address every case and give every defendant the attention deserved.

(3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant." *Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  The delay must be "presumptively prejudicial" before the Court may consider the remaining *Barker* factors.  *Id.* at 1261.  Defendant requests the Court hold that "any delay beyond six months following conviction creates a presumption of inordinate delay."  Dkt. No. 28 at 3.  For the reasons described above, the Court rejects Defendant's proposition.  The current situation in Oklahoma is not satisfactory to anyone, least of all the Court.  But it is not inordinate—it is simply the situation as it exists currently for all defendants, all counsel, and all court staff in these two districts.

IT IS THEREFORE ORDERED that the motion to schedule sentencing [Dkt. No. 28] filed by Defendant is DENIED.

DATED this 26th day of September 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE